UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBER SUMMER MARIE MEADOWS,<br><br>   Plaintiff,<br><br>   v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>   Defendant. | EDCV 16-2367 AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff filed this action on November 15, 2016. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 11, 13.) On May 30, 2017, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court reverses the decision of the Commissioner and remands for proceedings consistent with this opinion.

# I.

# PROCEDURAL BACKGROUND

In August 2013, Meadows filed applications for disability insurance benefits and supplemental security income, and alleged an onset date of August 10, 2008. Administrative Record ("AR") 13. The applications were denied initially and on reconsideration. AR 13, 115-16, 143-44. Meadows requested a hearing before an Administrative Law Judge ("ALJ"). On May 14, 2015, the ALJ conducted a hearing at which Meadows and a vocational expert testified. AR 28-52.

On June 18, 2015, the ALJ issued a decision denying benefits. AR 10-23. The ALJ noted that Meadows was previously found not disabled in a decision by an ALJ dated May 4, 2012. AR 13, 75-90. The onset date was amended to start the day after the date of the prior ALJ's decision. AR 32-33. The ALJ found new and material evidence that showed changed circumstances in the period after May 4, 2012. AR 13.

On September 20, 2016, the Appeals Council denied the request for review. AR 1-5. This action followed.

# II.

# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting

evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.
# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks omitted).

## B. The ALJ's Findings

The ALJ found that Meadows met the insured status requirements through December 31, 2013. AR 16. Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Meadows had the severe impairments of degenerative disc disease, lumbar spine; obesity; mood disorder; anxiety disorder; personality disorder; and polysubstance abuse. AR 16.

The ALJ found that Meadows had the residual functional capacity ("RFC") to perform medium work except that she was limited to moderately complex tasks that are non-public, and to occasional, superficial and non-intense interaction with coworkers. Meadows was precluded from team work, working in a team setting, and being in

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

3

charge of safety operations. AR 17. Meadows was incapable of performing past relevant work, but there were jobs that exist in significant numbers in the national economy that she could perform such as linen room attendant, marker labeler and stores laborer. AR 21-22.

### C. Treating Physician

Meadows contends the ALJ erred in evaluating the opinions of her treating psychiatrist, Dr. Eklund.

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). To reject an uncontradicted opinion of a medically acceptable treating source, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn*, 495 F.3d at 632 (citations and quotation marks omitted). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

"'The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.'" *Ryan v. Comm'r*, 528 F.3d 1194, 1202 (9th Cir. 2008) (citation omitted) (emphasis omitted).

On November 19, 2012, Dr. Ecklund opined that Meadows had major depressive disorder with low energy, poor concentration and low motivation.[2] AR 362.

---

[2] Dr. Ecklund's prior opinion dated November 29, 2011 was discounted by the prior ALJ in the decision dated May 4, 2012.

4

On October 28, 2013, Dr. Ecklund completed a mental disorder questionnaire. AR 380-84. Dr. Ecklund had treated Meadows since January 2010. He noted that she reported trying to overdose in 2009 and was homeless in 2010. AR 380-81, 384. She reported being molested as a child, using marijuana daily for 15 years and consuming alcohol daily for one year in 2005. Meadows becomes argumentative when asked about stressful events. She can mis-hear people and get angry. She has learning disorders. AR 381, 383. She has mood swings and does not trust people. AR 382. She struggles to complete tasks and has fought with people in the past. AR 383.

Dr. Eklund diagnosed major depressive disorder and polysubstance dependence. AR 384. He opined that Meadows had poor abilities in every function except that she had a fair ability to be aware of normal hazards and react appropriately. AR 388-89.

The ALJ gave "some weight" to Dr. Eklund's opinions that Meadows struggled to complete tasks, argued/fought with others, and had no limitations with daily activities. AR 21, 382-83. The ALJ took these opinions into account in his RFC assessment. AR 21. However, the ALJ gave little weight to Dr. Eklund's opinions that she was unable to work, had poor mental functioning and was unable to sustain mental activities. AR 20. The ALJ found that these opinions were unsupported by the evidence and that Meadows was able to function to a greater degree than stated by Dr. Eklund. The ALJ relied on Meadows' statements and the observations of non-mental health physicians that Meadows presented with normal mood and affect, and was pleasant.[3] AR 18-19, 20-21. The ALJ's reasons are supported by substantial evidence. The ALJ inquired whether she was still getting into fights. Meadows responded that she "been doing good so far."[4] AR 35. Her panic attacks occur maybe once a week or once a month,

---

[3] The ALJ may consider the statements by Meadows' treating physicians even if they were not psychiatrists. See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987).

[4] She had previously been fired for "cussing out security" and "fighting with my boss cuz she was being mean." AR 251.

and last either one minute or one day.  AR 41-42.  On depressed days, Meadows gets up, feeds the dog, and takes a shower.  "That's about it."[5]  AR 44.  However, her written statements indicate she likes watching TV, playing video games and listening to music.  AR 249; *see also* AR 363 (same report to Dr. Eklund).  She makes simple meals using a microwave and does dishes.  AR 246-47, 249.  Her friend's written statement added that Meadows cleans her own room.  AR 257.  She had some college courses.  AR 48.  The ALJ noted that Meadows was able to testify on her behalf.  AR 20; *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (ALJ may rely on claimant's appearance and testimony at hearing).  As the ALJ noted, Meadows reported to Dr. Eklund that she wanted SSI benefits to "get my own place" and she was going to the court hearing.  AR 20, 399.

The ALJ could reasonably infer that Meadows' ability to perform these functions were inconsistent with Dr. Eklund's extreme opinion that she had a poor ability to understand and carry out even very short and simple instructions.  AR 388.  The ALJ did not err.

### D. Credibility

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  The ALJ found that Meadows' medically determinable impairments could reasonably be expected to cause some of the alleged symptoms.  AR 19.

Second, when an ALJ concludes that a claimant is not malingering and has satisfied the first step, "the ALJ may 'reject the claimant's testimony about the severity

---

[5] Meadows reported that her cat ran away in March 2013.  AR 369.

of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted); *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (citation omitted). "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Id.* (citation omitted).

The ALJ found that Meadows' statements were "less than fully credible." AR 18. The ALJ inferred that Meadows was exaggerating the severity of her symptoms from the inconsistencies with the objective medical record and the inconsistencies between Meadows' allegations and her admitted activities described above. AR 18-21. The ALJ's reasons are supported by substantial evidence. Medical records, including Dr. Eklund's opinion, note that Meadows is able to do activities of daily living. AR 382, 417, 427. The ALJ noted Meadows' testimony that she last used marijuana a month ago. AR 18, 35. Medical records in March 2015 indicate Meadows reported using marijuana "regularly" at night "for sleep." AR 447. Medical records also indicate mild or moderate depression. AR 354, 400, 402. The ALJ did not err.

### E. Mental Residual Functional Capacity

The ALJ gave little weight not only to Dr. Eklund's opinions but also to the opinions of the state agency review physicians that Meadows was moderately limited in social functioning; concentration, persistence or pace; and ability to understand and carry out detailed instructions. AR 20, 124, 126. The state agency review physician found Meadows mentally capable of performing sustained simple tasks with limited public interactions. AR 127; *compare* AR 126 (referring to short and simple instructions). The ALJ, by contrast, limited Meadows to moderately complex tasks that

are non-public, and to occasional, superficial and non-intense interaction with coworkers. Meadows was precluded from team work, working in a team setting, and being in charge of safety operations. AR 17.

Meadows reported to Dr. Eklund that the reason she cannot work is her mood swings and her inability to deal with people. "I always get fired when I work . . . they say I can't fight with [illegible]." AR 401; *see also* AR 372 (I get fired b/c flip out on people"). Meadows testified that she sees a therapist, and Dr. Eklund's records refer to treatment by a therapist named Tiffany beginning April 2014. AR 35, 400-04, 407, 411. Meadows does not appear to have submitted mental health records from Tiffany.

"The government is not required to bear the expense of an examination for every claimant." *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001). "Some kinds of cases, however, do 'normally require a consultative examination,' including those in which 'additional evidence needed is not contained in the records or [the claimant's] medical sources,' and those involving an 'ambiguity or insufficiency in the evidence [that] must be resolved.'" *Id.* (quoting 20 C.F.R. §§ 404.1519a(b), 416.919a(b)). "A specific finding of ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire, where the record establishes ambiguity or inadequacy." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). An ALJ has broad latitude to decide whether or not to order a consultative examination. *Reed*, 270 F.3d at 842.

Here, the ALJ found the treating physician and the state agency review physicians' opinions to be inadequate. The ALJ's own observations of Meadows at the hearing and her admitted daily activities do not constitute substantial evidence to support the ALJ's mental RFC assessment that she could perform moderately complex tasks. *See Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (evidence of claimant's cross-country car trip was insufficient to support ALJ's RFC assessment that was unsupported by medical evidence and that contradicted opinion of medical expert); *Day*, 522 F.2d at 1156-57. The ALJ erred.

**F.     Relief**

The decision whether to remand for further proceedings is within the discretion of the district court. *Treichler v. Comm'r*, 775 F.3d 1090, 1099 (9th Cir. 2014). When there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1101. However, where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.*

Remand is appropriate because the record is not fully developed and there are outstanding issues to be resolved before a determination can be made.

## IV.
## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and remanded for proceedings consistent with this opinion.

DATED: June 9, 2017

_____
ALICIA G. ROSENBERG
United States Magistrate Judge